UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIE MURRAY,

                Plaintiff,                **DECISION AND ORDER**

    v.

                                                  6:19-CV-06342 EAW

JOSEPH NOETH, Superintendent, *et al.*,

                Defendants.
_____

## **INTRODUCTION**

*Pro se* plaintiff Willie Murray ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 asserting claims that arose while he was incarcerated at Attica Correctional Facility ("Attica"). (Dkt. 1; Dkt. 14). Presently before the Court is a motion for summary judgment (Dkt. 99) and a motion to strike (Dkt. 124) filed by defendants Corrections Sergeant Carroll ("Defendant Carroll"), Corrections Officer Erickson ("Defendant Erickson"), Corrections Officer Foster ("Defendant Foster"), Corrections Officer Hembrook ("Defendant Hembrook"), Superintendent Noeth ("Defendant Noeth"), and Dr. Williams ("Defendant Williams") (collectively, "Defendants").

For the following reasons, Defendants' motion for summary judgment is granted as to the claims against Defendant Noeth for denial of access to the courts and denial of medical care, but it is otherwise denied. Additionally, Defendants' motion to strike is granted in part and denied in part.

## BACKGROUND

I. **Plaintiff's Allegations**

Plaintiff's amended complaint (Dkt. 14)[1] sets forth the following allegations concerning his prior confinement at Attica. On February 28, 2019, Defendant Noeth authorized officers to "conduct a search on [Plaintiff's] cell and confiscate all [] personal bus[]iness and fin[an]cial documents." (*Id.* at 6). Plaintiff then sent a letter to Defendant Noeth informing him that he would file a replevin action to obtain the documents that were confiscated. (*Id.*). Plaintiff hand wrote the replevin motion and sent it to the facility law library to be typed. (*Id.* at 7). Defendant Hembrook received the motion, issued Plaintiff a misbehavior report, and informed Defendant Noeth that Plaintiff was planning to sue him. (*Id.*).

On March 14, 2019, Defendant Noeth ordered Defendant Hembrook and Defendant Foster "to search [Plaintiff's] cell and confiscate all [Plaintiff's] legal documents perta[in]ing to Article 71 Replevin Action." (*Id.*). Plaintiff alleges his documents did not pose a security risk, but that Defendant Noeth still ordered a search of his cell and the

---

[1] Because Plaintiff's amended complaint is verified (*see* Dkt. 14 at 12), the Court may rely on it for factual details. "A plaintiff's verified complaint is to be treated as an affidavit," *Zielinksi v. Annucci*, No. 9:17-CV-1087 (GTS/CFH), 2020 WL 7074845, at *7 (N.D.N.Y. Nov. 12, 2020) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist. . . .")); *see also Brandon v. Kinter*, 938 F.3d 21, 27 n.5 (2d Cir. 2019) ("Brandon's Amended Complaint was sworn under penalty of perjury. Therefore, his allegations in the complaint can be considered as evidence for summary judgment purposes.").

confiscation of all his legal documents. (*Id.*). As a result, Plaintiff could not file his replevin action. (*Id.*).

Defendant Noeth also authorized Defendant Carroll and Defendant Erickson to use force to remove Plaintiff from his cell on March 14, 2019, because Plaintiff refused to return his Styrofoam tray. (*Id.* at 8). Plaintiff was sprayed three times with chemical agents and was not allowed to shower or decontaminate himself. (*Id.* at 8-9).

Plaintiff was then taken upstairs where he agreed to follow the strip procedures. (*Id.* at 9). Defendant Carroll ignored Plaintiff and ordered Defendant Erickson to conduct a forceful strip search. (*Id.*). Defendant Erickson stripped Plaintiff naked and sexually assaulted him by placing an object up his rectum, resulting in extreme pain and bleeding. (*Id.*). Defendant Carroll remained present during the entire incident and did not order Defendant Erickson to stop. (*Id.*).

Plaintiff was then "placed in a cell filled with urine on the floor and feces smeared all over the bed frame, the floors and the walls." (*Id.*). Plaintiff was also denied a mattress and pillow. (*Id.*). Officers turned off the water in the cell and Defendant Erickson turned off the toilet, leaving Plaintiff unable to drink water, wash the chemical agents from his face, or flush the toilet. (*Id.*).

On March 15, 2019, Plaintiff was seen by medical staff for the sexual assault. (*Id.* at 10). Defendant Williams ordered that Plaintiff be escorted to an outside hospital. (*Id.*). Defendant Noeth ignored Defendant Williams' order and Plaintiff was denied his hospital appointment and medical treatment. (*Id.*).

Plaintiff then wrote "numerous sick call slips requesting to be seen by medical," but received no response. (*Id.*). Plaintiff wrote to Defendant Williams, but Defendant Williams did not reply, nor did he conduct a follow up appointment. (*Id.*).

Plaintiff alleges he has "experienced excessive pain, blood discharges from my rectum[,] discomfort in my rectum for months, . . . perm[ane]nt damage in my left knee, . . . [and] an injury to my left eye." (*Id.*). Plaintiff has also been diagnosed with "anxiety, depression and Post Tra[u]matic Stress Disorder." (*Id.*).

## II.   Plaintiff's Claims That Survived Screening

The Court screened Plaintiff's amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and held that the following claims were sufficient to survive initial review and proceed to service:

- Denial of access to the courts claims against Defendants Hembrook, Foster, and Noeth;

- Excessive force claims for the forcible removal of Plaintiff from his cell against Defendants Carroll, Erickson, and Noeth;

- An excessive force claim against Defendant Erickson based on a forcible strip search and alleged sexual assault;

- A failure to protect claim[2] against Defendant Carroll based on a forcible strip search and alleged sexual assault;

---

[2]   Plaintiff's claim against Defendant Carroll appears to be a claim for failure to intervene. A claim for failure to protect arises when an inmate is incarcerated under conditions posing a substantial risk of serious harm and prison officials exhibit deliberate indifference to that risk. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Such a claim often

- Conditions of confinement claims against Defendants Noeth, Erickson, and Carroll; and

- Denial of medical care claims against Defendants Williams and Noeth.

(Dkt. 19 at 5-11).

### III.   Defendants' Pending Motion for Summary Judgment

Defendants filed the instant motion for summary judgment on March 26, 2024. (Dkt. 99). In their filing, Defendants submitted a declaration from their counsel, Assistant Attorney General Hillel Deutsch, attaching various exhibits relied upon by Defendants in support of summary judgment, including video evidence, medical records, and Plaintiff's purported grievance record. (Dkt. 99-3). Defendants also submitted a declaration from Defendant Noeth in which he denies any personal involvement with the searches of Plaintiff's cell on February 28, 2019, and March 14, 2019, and resulting confiscation of records, or any medical care decisions pertaining to Plaintiff after the alleged sexual assault. (Dkt. 100).

Then, several weeks after filing the summary judgment motion, Defendants submitted another declaration from their counsel Mr. Deutsch, in which he states that the previously submitted grievance documents "included a certification from CORC" (Dkt.

---

arises when prison officials fail to protect prisoners from violence at the hands of other prisoners. *Id.* On the other hand, a claim for failure to intervene arises when a prison official fails to "intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in [his or her] presence." *Samuels v. Fischer*, 168 F. Supp. 3d 625, 646 (S.D.N.Y. 2016). Based on the facts in the complaint, Plaintiff appears to be asserting a claim for failure to intervene because he alleges Defendant Carroll failed to stop a sexual assault that occurred at the hands of another officer.

102 at ¶ 5) and that "[t]o ensure the admissibility of the remaining documents, I requested a certification of those documents from Five Points CF" (*id.* at ¶ 6). Mr. Deutsch attaches to his declaration a certification from "Stacy Warne" identified as filling the "position of OA 2" and she states that pursuant to Federal Rule of Evidence 902, the "attached documents . . . are the complete, true, and exact copy of the; Paper Parole Record." (*Id.* at 5). She then also states as follows:

> 18A4402 MURRAY, WILLIE  The attached records are maintained in the regular course of business of D.O.C.C.S. and, with regard to the video recording that were created by employees of D.O.C.C.S., I certify that those records were made in the regular course of business of D.O.C.C.S., that it was in the regular course of business of D.O.C.C.S. to make them at the time of the condition, act, transaction, occurrence or event documented in such records, or within a reasonable time thereafter, and that the employees who created the records had a duty to truthfully record such condition, act, transaction, occurrence, or event. However, as to records which were not created specifically by employees of the D.O.C.C.S., and which were received from other agencies, departments, businesses, or individuals, I certify only that the record is a true and accurate copy of the record contained or maintained here at Five Points Correctional Facility, for the case of Incarcerated Individual 18A4402 MURRAY, WILLIE.

(*Id.*). No documents are attached to the certification. Similarly, no certification has been provided from CORC, as claimed by Mr. Deutsch.

## IV. Plaintiff's Response to the Pending Motion

Plaintiff requested multiple extensions of time to respond. (Dkt. 103; Dkt. 107; Dkt. 109; Dkt. 112; Dkt. 114; Dkt. 118). Plaintiff then sent a letter informing the Court that he was recently released from punitive segregation, that there were issues with sending his response, and that he sent his mother his response to mail to the Court. (Dkt. 122). On March 3, 2025—almost one year after the motion was initially filed—Plaintiff's response

was finally filed. (Dkt. 123). Defendants filed a motion to strike Plaintiff's response on March 5, 2025. (Dkt. 124).

## DISCUSSION

### I. Legal Standards

#### A. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, it finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory

allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B. Section 1983 Claims

"To succeed on a section 1983 claim, Plaintiff must prove two essential elements: (1) defendants . . . acted under color of state law; and (2) as a result of their actions, Plaintiff suffered a denial of his federal statutory or constitutional rights or privileges." *Sampson v. City of Schenectady*, 160 F. Supp. 2d 336, 342 (N.D.N.Y. 2001); *see Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must show the "personal involvement of defendants in alleged constitutional deprivations." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). The theory of respondeat superior is unavailable in a § 1983 action. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). "Instead, a plaintiff must . . . prove

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

## II. Evidence Before the Court

The only admissible evidence presented by Defendants is Defendant Noeth's declaration. Mr. Deutsch, as counsel to Defendants, lacks personal knowledge regarding the underlying facts and does not claim otherwise. Thus, his declaration cannot be relied on for admissible evidence. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983) (attorney affidavit "which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight" when considering summary judgment motion).

While various exhibits are attached to Mr. Deutsch's declaration, he is plainly not a qualified witness to authenticate those exhibits or lay the foundation for their admissibility.[3] Although Mr. Deutsch sought to cure this deficiency several weeks after filing the summary judgment motion by submitting a certification from Stacy Warne, that effort was inadequate for several reasons.

First, contrary to the requirements of Federal Rules of Evidence 803(6) and 902(11), there is nothing in the record before the Court establishing that Ms. Warne is a qualified

---

[3] As noted above, contrary to Mr. Deutsch's representations, there is no certification for the grievance records from CORC in the record.

witness to authenticate the various records attached to Mr. Deutsch's declaration. *See In re Lyman Good Dietary Supplements Litig.*, No. 17-CV-8047 (VEC), 2020 WL 3414927, at *5 (S.D.N.Y. June 22, 2020) (certification "must be executed by a person who 'would be qualified to testify as a custodian or other foundation witness'" and "the witness must have 'enough familiarity with the record-keeping system of the entity in question to explain how the record came into existence in the course of a regularly conducted activity of the entity'") (citations omitted); *see also United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) ("To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the [record].") (internal quotations and citation omitted). The certification identifies Ms. Warne as filling the position of "OA 2", but there is no explanation as to the meaning of that position, or linking that position to somebody qualified to lay the foundation for the admissibility of the records at issue.

Second, Ms. Warne's certification appears to reference records that have nothing to do with this case— "the Paper Parole Record"—and it also references records purportedly attached to the certification, but nothing is attached. Thus, even if Ms. Warne were a qualified witness, it is not even clear what she is purporting to authenticate.

Third, Ms. Warne's certification states that she is authenticating records from Five Points Correctional Facility, but the events at issue occurred at Attica. Defendants do not explain why an individual from a different facility is qualified to lay the foundation for the admissibility of records—such as video tapes—created at a different prison.

Thus, the only evidence appropriately presented by Defendants in support of the pending summary judgment motion is the declaration of Defendant Noeth. The exhibits attached to Mr. Deutsch's declaration will not be considered.

### III. Conditions of Confinement Claims Against Defendants Noeth, Erickson, and Carroll

Defendants' sole argument as to Plaintiff's conditions of confinement claims against Defendants Noeth, Erickson, and Carroll is that Plaintiff failed to exhaust his administrative remedies. (Dkt. 99-4 at 12-13). But this argument relies on the authenticity and admissibility of the grievance records submitted by Defendants. As noted above, Defendants have failed to meet their burden in that regard. Therefore, Defendants' motion for summary judgment on the conditions of confinement claims is denied.

### IV. Denial of Access to the Courts Claims Against Defendants Hembrook, Foster, and Noeth

Plaintiff alleges Defendant Noeth ordered Defendant Hembrook and Defendant Foster to search his cell and confiscate legal documents regarding a replevin action. (Dkt. 14 at 7). Plaintiff argues that his documents did not pose a security risk to the facility and, because of his documents being confiscated, Plaintiff could not file his replevin action. (*Id.*).

"To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury." *Zeigler v. N.Y.*, 948 F. Supp. 2d 271, 294 (N.D.N.Y. 2013) (citing *DeMeo v. Kean*, 754 F. Supp. 2d 435, 445 (N.D.N.Y. 2010)). "To establish an 'actual injury,' plaintiff must show that 'the

defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim.'" *Id.* (quoting *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008)).

In support of their motion for summary judgment on these claims, Defendants proffer the declaration of Defendant Noeth. Defendant Noeth denies any involvement in authorizing the search of Plaintiff's cell, stating that he "was not involved in common situational day-to-day decisions such as authorizing cell searches." (Dkt. 100 at ¶ 3). Defendant Noeth further contends that he was not involved in the "searches of [Plaintiff's] cell or the confiscation of the documents, including UCC and unauthorized lien documents, discovered therein." (*Id.* at ¶ 4).

In his complaint, Plaintiff makes conclusory allegations that Defendant Noeth authorized searches of his cell which resulted in officers confiscating his personal business and financial documents. (Dkt. 14 at 6-7). But this cannot overcome the evidence of Defendant Noeth's lack of personal involvement as shown in his sworn declaration. Based on the undisputed facts in the record before the Court, judgment is mandated in favor of Defendant Noeth on this claim.

On the other hand, as to Defendant Hembrook and Defendant Foster, Defendants have not met their burden. They argue they are entitled to summary judgment because Plaintiff's replevin claim that he would have pursued with the confiscated documents would be found frivolous. (Dkt. 99-4 at 15). But Defendants cite no case law in support of this contention that Plaintiff's claim would be dismissed as frivolous. Indeed, inmates are allowed to bring replevin actions. *Toliver v. City of New York*, No. 10 CIV. 5806 (SHS) (JCF), 2013 WL 6476791, at *7 (S.D.N.Y. Dec. 10, 2013), *report and recommendation*

*adopted*, No. 10 CIV. 5806 SHS, 2014 WL 549402 (S.D.N.Y. Feb. 11, 2014) ("It is well established that New York provides inmates with the opportunity for a meaningful postdeprivation hearing through state law causes of action for 'negligence, replevin, or conversion which could fully compensate [the plaintiff] for his alleged property loss.'") (citation omitted). On this record, Defendants have failed to meet their burden to establish that any claim commenced by Plaintiff with the confiscated paperwork would have been dismissed as frivolous. Thus, Defendants' motion for summary judgment as to the denial of access to the courts claims against Defendant Hembrook and Defendant Foster is denied.

V. **Excessive Force Claims for the Forcible Removal of Plaintiff from his Cell Against Defendants Carroll, Erickson, and Noeth**

Plaintiff claims that Defendant Noeth authorized Defendant Carroll and Defendant Erickson "to use force to remove me from my cell, bec[a]use I was refusing to return my styrofoam feed up tray." (Dkt. 14 at 8). Plaintiff alleges that he was sprayed three times with chemical agents as a result and that he was not allowed to be decontaminated. (*Id.* at 8-9).

For an Eighth Amendment excessive force claim to survive a motion for summary judgment, the evidence, viewed in the light most favorable to the non-moving party, must go "beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives," and instead "support a reliable inference of wantonness in the infliction of pain. . . ." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). "'[S]ome degree of injury is ordinarily required to state a claim' of excessive use of force in violation of the Eighth Amendment." *Taylor v. N.Y. Dep't of Corr.*, No. 10 CIV. 3819

(JPO), 2012 WL 2469856, at *4 (S.D.N.Y. June 27, 2012) (quoting *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999)).  Accordingly, "a *de minimis* use of force will rarely suffice to state a constitutional claim."  *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).  Indeed, "[t]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation."  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Defendants rely soley on video evidence in support of their argument in favor of summary judgment on this claim.  In fact, Defendant Noeth's declaration does not address this claim or the use of chemical agents.  (*See* Dkt. 100).  But as discussed above, Defendants have not adequately established the authenticity or admissibility of the video evidence.

By contrast, Plaintiff, in his verified complaint, claims that Defendant Noeth authorized Defendants Carroll and Erickson "to use force to remove me from my cell" because Plaintiff refused to return his feed up tray. (Dkt. 14 at 8).  Plaintiff alleges he was "sprayed three times with chemical agents and denied to be decontaminated."  (*Id.*).  Plaintiff alleges various injuries, including a left eye injury and a torn ACL in his left knee. (*Id.*).  On this record, Defendants' motion for summary judgment as to the excessive force claims for the forcible removal of Plaintiff from his cell against Defendants Carroll, Erickson, and Noeth, is denied.

VI. **An Excessive Force Claim Against Defendant Erickson Based on a Forcible Strip Search and Alleged Sexual Assault, and related Failure to Intervene Claim against Defendant Carroll**

Plaintiff states that Defendant Erickson conducted a forceful strip search of him and sexually assaulted him. (Dkt. 14 at 9). Plaintiff contends that Defendant Carroll watched the entire incident and failed to intervene. (*Id.*).

Again, Defendants have failed to meet their summary judgment burden. They rely on video evidence in support of their motion, but as already discussed, they have failed to establish its authenticity or admissibility. Moreover, even if the video evidence could be considered, it is not at all clear as to the events that occurred during the alleged sexual assault.

On this record, the Court cannot grant summary judgment in favor of Defendants on Plaintiff's claim against Defendant Erickson based on a forcible strip search and alleged sexual assault. Similarly, the claim against Defendant Carroll for failure to intervene cannot be resolved on this record. Thus, the motion for summary judgment on these claims is denied.

VII. **Denial of Medical Care Claims Against Defendants Williams and Noeth**

Plaintiff argues that he was denied medical care by Defendant Williams and Defendant Noeth. (*Id.* at 10-11). The day after the sexual assault, Plaintiff saw members from "Albany special housing unit doing rounds." (*Id.* at 10). Plaintiff stopped them and they brought him to see Defendant Williams. (*Id.*). Defendant Williams told Plaintiff that "the facility did not have a Prison Rape Examiner, so he ordered that the facility escort me out to the outside hospital." (*Id.*). Defendant Noeth ignored Defendant Williams' order

and instead demanded officers forcefully place Plaintiff back in his cell. (*Id.*). Plaintiff alleges he was never seen for his sexual assault injuries. (*Id.*). Plaintiff then began to write numerous sick call slips requesting to be seen by medical. (*Id.*). Plaintiff wrote Defendant Williams and the nurse administrator, but Defendant Williams never conducted a follow up appointment, nor did he assure Plaintiff received the medical treatment he ordered. (*Id.*).

To establish an unconstitutional denial of medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citation omitted). "The standard for deliberate indifference includes a subjective component and an objective component." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

To satisfy the objective component, a plaintiff's medical needs must be sufficiently serious. *Hathaway*, 37 F.3d at 66. "A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Sloane v. Borawski*, 64 F. Supp. 3d 473, 492 (W.D.N.Y. 2014) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

> Where the claims concern the alleged inadequacy of treatment, as opposed to the complete denial of treatment, the seriousness inquiry is narrower. In such cases, the focus is on the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract.

*Lawrence v. Evans*, 136 F. Supp. 3d 486, 489-90 (W.D.N.Y. 2015) (internal quotation marks and citations omitted), *aff'd*, 669 F. App'x 27 (2d Cir. 2016).

To establish the subjective component, a plaintiff must show that the prison official had actual knowledge of his serious medical needs but was deliberately indifferent to those needs. *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003). "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). Indeed, "[m]edical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by a prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill*, 657 F.3d at 123 (quoting *Chance*, 143 F.3d at 703). "In this connection, the Supreme Court has held that 'a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

In support of their assertions, Defendants submit the declaration of Defendant Noeth. Defendant Noeth states that he

> was . . . not involved in any decision to send [Plaintiff] to an outside hospital for evaluation after he made a . . . complaint alleging sexual assault, or any subsequent decision not to send him. Under then-operative Directive 4028A, when a[n] . . . allegation of sexual assault is made by an incarcerated individual against a member of the staff, the facility watch commander was to be notified. . . . There was no requirement or protocol for informing the Superintendent.

(Dkt. 100 at ¶ 12). Defendant Noeth also claims that he did not cancel Plaintiff's outside medical evaluation or order officers to place Plaintiff in his cell rather than transport him to an outside hospital. (*Id.* at ¶ 13).

Defendants have shown that Defendant Noeth did not have any personal involvement with Plaintiff's medical treatment. Defendant Noeth's declaration sets out the standard for sexual assault claims—the watch commander rather than the superintendent is notified. Additionally, Defendant Noeth states that he was unaware of Plaintiff's sexual assault claim and that he did not refuse Plaintiff outside hospital access. Plaintiff does not support his contentions with any evidence that suggests Defendant Noeth knew about Plaintiff's serious medical needs. Rather, Plaintiff simply makes conclusory allegations about Defendant Noeth's alleged personal involvement, which cannot defeat summary judgment. Thus, Defendants have met their burden to show that summary judgment should be granted for the denial of medical care claim against Defendant Noeth.

As to Defendant Williams, Defendants have failed to demonstrate that Defendant Williams was not deliberately indifferent to Plaintiff's medical needs. Defendants have put forward no admissible evidence with respect to this claim. While they rely on medical records in support of their argument, as discussed above, Defendants have failed to establish the authenticity or admissibility of those records.

On the other hand, Plaintiff alleges he was never seen for his sexual assault injuries, that Defendant Williams never followed up on Plaintiff's injuries, and that his sick call slips were destroyed by medical staff. On this record, summary judgment must be denied. *See, e.g.*, *Donovan v. Butler*, No. 3:21-CV-337 (SVN), 2024 WL 381011, at *8 (D. Conn. Feb. 1, 2024) ("Because cursory treatment of an inmate can be evidence of deliberate indifference to an inmate's health, there is a question of material fact whether Dr. Clements' actions establish deliberate indifference."); *Ruffin v. Deperio*, 97 F. Supp. 2d

346, 353 (W.D.N.Y. 2000) (deliberate indifference can be shown when a doctor's treatment is "cursory" or evidences "apathy").

### VIII. Motion to Strike

Finally, the Court turns to Defendants' motion to strike. (Dkt. 124). The Court agrees that Plaintiff's response was exceptionally untimely. That said, at least with respect to the claims where the Court has granted summary judgment—Plaintiff's denial of access to the courts claim and denial of medical care claim against Defendant Noeth—the Court has reviewed Plaintiff's response and concluded it would not change the result. Accordingly, the motion to strike is denied as to those claims, but it is otherwise granted.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 99) is denied except as to (1) the denial of access to the courts claim against Defendant Noeth, and (2) the denial of medical care claim against Defendant Noeth. Additionally, Defendants' motion to strike (Dkt. 124) is granted in part and denied in part.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     March 27, 2025
           Rochester, New York